Thank you, Your Honor. May it please the Court, Steve Gibbons for Proshipline and EP Team. Also, for the record, I did not brave any snowy passes to arrive this morning. That's okay. It's not required. The frosty deck of a Washington State ferry. Did you come by ship? I did, actually. The Ferry Wenatchee. That, of course, is a maritime link in our state highway system. The burden of proship in the court below was to establish, on a prima facie basis, four elements. They are, simply stated, a colorable claim for breach of a maritime agreement that the defendant was, on November 27, 2007, not found in the Western District of Washington. Third, that the defendant's property is or would be in the district. And fourth, the absence of a statutory bar. Nothing more was required of proship at this pre-discovery juncture of the case in the court below. The record on appeal establishes that proship did, in fact, state a proper claim for breach of a maritime contract. The agreement was maritime in nature as the services provided under that agreement were unquestionably facilitative of maritime commerce. And that would, of course, be the rule under Central Gulf Lines and also this court's decision in the Henkins case of 1974. That was all that proship needed to establish with regard to the first element of a Rule B ancillary action. Proship also established in the court below that Aspen was not found in the district. In other words, did not have an agent for service of process in this district, had no place of business in this district, and was not registered to do business in Washington. Of course, had no permanent presence of any kind in the district. Neither the Supreme Court nor this court has ever ruled that Rule B requires more than that with regard to the second element. Or that Rule B means something other than what it says on its face, which is that if a defendant is not found within the district when a verified complaint, praying for attachment and the affidavit required, etc., are filed, in other words, at that time, then if the defendant cannot be found within the district, then, in fact, the Rule B writ should issue. Counsel, maybe you can help me get to what I think is the heart of the case. Assuming that the maritime writ was proper initially, aren't we really dealing with the question of equitable vacator and whether or not it was an abuse of discretion on the part of the district court to grant vacator? Certainly, that's an important issue, Your Honor, and I'm happy to address it. It seems to me that only the Second Circuit has adopted this equitable vacator rule, which is a doctrine developed by the Second Circuit, and I think under circumstances that we all understand because of the press of these electronic fund transfers there. In any event, under that Second Circuit doctrine, what's developed is the following. If a defendant in a Rule B ancillary action can establish, and it's the defendant that has the burden of proof under this equitable vacator rule of the Second Circuit, if the defendant can establish equitable grounds for vacating a Rule B writ that is otherwise proper, then, of course, the writ can be set aside. And, of course, in the Second Circuit, one basis for this equitable vacator of a Rule B writ is the presence of both the plaintiff and the defendant in some other jurisdiction. Are you disputing that you are not present in the Southern District of Texas? We do not dispute that we are present in the Southern District of Texas. In fact, you invoked the jurisdiction of that court when you filed your lawsuit against Aspen. That's correct, Your Honor. All right. Now, for purposes of this presence in the same jurisdiction sub-rule of the equitable vacator rule that I believe is unique to the Second Circuit, the defendant need only have an agent in that jurisdiction for purposes of service of process. Now, I think that- Well, you submit to the jurisdiction of the court when you filed the lawsuit, correct, in Southern Texas? Yes. Okay. Yes. There's no question that both PSL and EPT are present in the Southern District of Texas? That is in question. Why is that so if they're both named plaintiffs in the lawsuit? I'm not sure I understand the question. Both entities are named as plaintiffs in the lawsuit in the Southern District of Texas, right? I'm sorry. Correct. Both EPT and pro-ship line are named, and they are both present in Texas. In Texas. Right. The question is whether it's sufficient under the Ninth Circuit's contemplation of the rule that the defendant can be present in that district simply by designating an agent for purposes of service of process. And I submit that that's not the rule of the Ninth Circuit. It's not any rule that's ever been adopted by the Supreme Court. And I think it is a rule that is limited, really, to the Second Circuit. And I don't think it's a proper rule for a bunch of different reasons, the principle of which is that it's way too easy to completely frustrate and avoid Rule B process under that contemplation of the rule by simply sending an e-mail or making a phone call to someone in the district and say, hey, we've got a ship coming in, we need an agent. But that's not the basis for your claim. As I understand it, the basis for your claim was Aspen engaged your clients for this putative brokerage arrangement. I'm not sure exactly what it's called. An agreement, essentially. And did so in Houston. And in doing so, presumably under the Texas long-arm statute, the defendant Aspen thereby did business in the Southern District of Texas, which makes it amenable to jurisdiction for service of process for your complaint, right? That's your theory? Of jurisdiction over Aspen in Houston. Well, I think that there are two separate issues here. One is, are you found for purposes of Rule B, which has its own jurisprudence? And the other one is, are you subject to the jurisdiction of the court in a given venue? Well, I guess where I'm going with all the questions, this is an issue of first impression, it seems to me, in the Ninth Circuit. Why shouldn't we follow the Second Circuit's lead and adopt this doctrine of equitable vacater, particularly where the parties are sophisticated business entities that have now, I guess, been ordered to commence international commercial arbitration in Singapore. Which they have done. Which they have done. I guess, where did the district court go wrong in the Western District of Washington in invoking the doctrine of equitable vacater? Well, first of all, I think that if the doctrine of equitable vacater is to be adopted by this court, it shouldn't be in this case. We didn't get to the stage of the case where discovery was allowed, for example. So, in other words, what would happen in order to consider the equities involved, I think the court would have to have had the benefit of discovery, which wasn't allowed at that juncture. Moreover, I think the equities in this case would point against the adoption of such a rule. But the problem is that equitable vacater arises in connection with a pre-judgment seizure, or garnishment, whatever you want to call it. It's a remedy that exists in maritime law. And of necessity, it has to be sort of handled on the fly. Here we've got a ship that's under marshal's arrest. And the district court is faced with the question of, you know, how do I discharge this maritime attachment? And the ship owner is coming in saying, we're not going to post a bond. So, if you want our property, you're going to have to get the bunkers off the vessel. Or if the- There isn't going to be time for protracted discovery. Protracted, no, but some discovery, yes. And I think that as this court observed in, I think it was the Venture Packer case back in the 70s, if it's allowed that these kinds of issues are determined, in other words, if the jurisdictional issue, and really this is a jurisdictional issue, is mixed up with the merits of the case, then there's all kinds of mischief that can happen. And I think this case is a perfect example of it. So we end up with a judgment entered in favor of a party that never made a verified claim to the property at issue, and on circumstances where there was no discovery, no hearing, no counterclaim, no answer to the complaint, no appearance except the special appearance of counsel. In other words, where a party avoided the jurisdiction of the court here and did so, and the court allowed all of that based on what was going on in the Second Circuit, under a Second Circuit rule, that where to be found is really defined in a way that's different from what's ever been defined anywhere else. And so I think for those reasons, that's wrong. And if the court were to adopt, in this case, the equitable vacator rule, it seems to me that in order to rule in favor of Aspen here, the court would also have to find that under this equitable doctrine of vacator, it's sufficient to be found if you're found in some other district. That's different from what the rule says. I don't think there's a reason for us to so limit. Part of the problem I'm having with your argument is that the nature of this maritime claim is not so much the provision of services for this particular vessel, but it's in the nature of a breach of contract and future lost profits damages from a business relationship that involves however many vessels, Aspen charters. And you're trying to secure, using admiralty process, the assets of this defendant for something that is arguable as to whether or not it's even a maritime claim, although the Second Circuit seems to think it is. And I think that was a correct decision because, in fact, the maritime nature of this agreement was established by the declaration of Jesse Biza, and that declaration was never rebutted, and it described in detail the exact services that were being provided. So clearly there was a maritime contract, and it was, I think, a mistake for the court to have ruled otherwise. So the proship did satisfy both the first and second requirements or elements of this Rule B process, I believe, and I think that's clear from the record. And there isn't any issue. I don't think there's, at least in my mind, I don't think there's any question as to whether or not you could properly obtain the maritime writ. The only question is whether or not that attachment stands or whether equity should step in and relieve the defendant in some way. It seems to me that's what this issue, what this case is all about. If equity in this case were to be applied to set aside the writ, it seems to me that it could only be applied after at least some, after at least an answer, first of all, by the defendant, and at least some limited discovery on the merits, because it seems to me like what the court is wrestling with mainly is something that goes to the merits of the claim under the contract. And that just simply wasn't provided here. That opportunity was not provided. So, Counsel, do you want to save some time for Rebecca? I would like to reserve. You've got to stop before that clock runs out. Okay. Thank you. It seems to me that what should have happened with regard to this is, first of all, the proship should not have been put to the really unusual and I think unheard of requirement of removing over 250 metric tons of bunker fuel and diesel oil from this vessel. It was part of the vessel? From the tanks. At the time of the seizure? At the time of the garnishment itself. But it also released the vessel. The court released the vessel. And what should have happened is if Aspen wanted to not post security and wanted the vessel to sail before a sale could be effected, then it seems to me it was incumbent upon Aspen to post the bond. So, in other words, what's happening here is Aspen wants to have it both ways. It wanted to have the ship leave immediately and it didn't want to post a bond. But your attachment didn't apply to the entire vessel. It just applied to the property that Aspen had on a chartered vessel, which was the bunker. That's true. You don't have the right to prevent the vessel from engaging in its voyages if there is a feasible way to remove Aspen's property, and the district court found pump it out. Well, there was another way forward, and that's the way provided by the rule. But it doesn't require the defendant to do that. What you're trying to read into the rule is a mandatory obligation, whereas the district court said, well, okay, the vessel owner could, or in this case the vessel charterer, could post a bond, or I'm going to order you, the attacher, to remove the bunkers that you've attached. And so you get the benefit of the arrest of the race, but now it's your problem is what you're going to do with all the oil. Actually, we were deprived of the benefit of the garnishment of the race, and we were deprived of that because the court didn't give us the other option, the option that's provided for by the rule, which is to order a sale in situ, which could have happened. Well, you have the option to put up the bond. The owner of the property, had there been a verified claim made to the property, could have put up the bond, and they chose not to do that or make a verified claim. So we ended up with a bizarre result, which is a judgment was entered on behalf of somebody that shouldn't have ever received a judgment. Counsel, you have more than a minute over to come out. Obviously, you should take whatever time is needed to respond to Judge Beazer and Judge Tom. But other than that, we should draw this to a close. Very well, Your Honor. Thank you very much. I'm going to add to your time to give you one minute for rebuttal to help clarify the issues. Good morning, Your Honors. May it please the Court, I'm Robert Bacow with Kiesel, Young & Logan. We represent Aspen in this appeal. I first wanted to make sure that all of Your Honors had a chance to receive the citation to supplemental authority that we submitted in the middle of November that was filed electronically, and I trust you have that. It's important because this case should be resolved on the basis of principles of res judicata, and that is because there has been litigation between the same parties in three different courts. Counsel, as to that, isn't the ship, isn't the race different in each court? So how are the issues the same? The physical property which was being sought was different in each of those places. Doesn't that block res judicata? It doesn't in a Rule B case, Your Honor. The reason is that the property is not the defendant itself. It's the named defendant, Aspen's the defendant, and the court can obtain jurisdiction over it to the extent of the value of the property that's before it. Okay. So they are the same parties. But is the attachment itself a separate claim? As I understand it, the claim here is for breach of a maritime contract. That's the claim which is subject to arbitration in Singapore. Right, and the writ is nothing more than a pre-judgment remedy that the plaintiff is permitted to invoke under the special rules of admiralty and maritimes. That's absolutely right. It's a provisional remedy under the supplemental admiralty rules. How does res judicata even apply? Because legal issues are at stake as to whether or not a party in the position of the plaintiffs and the appellants here have a right to proceed with it under the circumstances which were decided by the Second Circuit, and that is it affirmed the Southern District of New York's decision that equitably these very same parties cannot pursue Rule B attachments against my client's property, the reason being that all of them are present in the Southern District of Texas. Now, that may not have been a rule that's ever been adopted by the Ninth Circuit before, but it's a rule that was applied first in Texas when the court there turned away these same plaintiffs' request for Rule B attachment in Texas. The court said no, everyone's here. Then they tried to do it in New York, and the court said no. Among the reasons applied were everybody's in Texas in that case. That's what was recently affirmed by the Second Circuit in its decision. Was the race attached the same in each jurisdiction? It didn't make it that far in each jurisdiction, Your Honor. For example, in Texas, the application was denied outright, so there was no attachment that ever took place in Texas. In the Southern District of New York, it was different property that was attached than is the property that was attached in the Western District of Washington. It was an international wire transfer, wasn't it, in the Southern District of New York? It was different things that were going on, but the property of Aspen's that was there was money that was passing through a bank in New York. That got trapped in a New York bank. That's exactly right. So it's different character of property, but the legal principles and the underlying claim between the properties are the same. So you've got identity there. But I thought that Judge Sweet, in essence, was wrong in holding that there was no maritime contract. The Second Circuit decided that, Your Honor, and that in the same way that race judicata principles prevent these same plaintiffs from being able to proceed with a Rule B attachment for other reasons, we now have to concede to this Court that the Second Circuit's decision on that issue is binding upon us. And so I think that with the Second Circuit's decision, because it's between the same parties, the dispute as to whether or not it's a maritime contract is now passed out of the case. That's been decided by the Second Circuit. All the parties have to live with that decision. The Second Circuit told these very same parties, the same plaintiffs, that they may not relitigate the issue of whether or not the parties are all in Texas and whether or not that bars invocation of a Rule B provisional remedy. That's been decided between the same parties. That's where these principles of race judicata come into play in the case, and they put the brakes on everything. That's what decides this case. With respect to what happened here, it is important to look at the history and the parties who are present in each of these cases. Most importantly, one of the two things that we brought to the panel's attention in our citation of supplemental authority was a very recent decision by the Southern District of New York in another related case where the court ruled that EP Team itself was present in the Southern District of Texas. Our client had previously contested whether or not they were because our client was itself pursuing a Rule B attachment in New York. But that's now binding upon us because Judge Sweet recently in that other case decided that EP Team is in Texas. So you've got different decisions multiple times telling the parties, guys, you're all in Texas, and you cannot pursue a Rule B attachment where you can all be found in the same district. You can go litigate there. I think I now understand where Mr. Gibbons was trying to go at the beginning of his presentation. You both concede that the first element is present for a Rule B attachment, which is that this is a maritime claim, right? We don't think that's the right answer, but it's what the Second Circuit ruled. You told me that you're bound and reasonable to contemplate. We're bound by what the Second Circuit ruled. We'll accept that as law of the case. Right. So then the question is if you're going to seize a vessel chartered by Aspen in the Western District of Washington, is the defendant present in this district, not the Southern District of Texas? So you don't meet that, or he meets that element, does he not? No, he does as a prima facie matter, but that's all. And to take your point, Your Honor, your point was, okay, if you can prove prima facie that the judge did the right thing in the first instance to say I'm signing your writ, here you go. We have a constitutional right, because that's all done ex parte. Right. We have a constitutional right, the way it was sorted out, to a prompt post-seizure hearing. And it's at that time that those issues that are put forth in order to get that writ are put to the test. And it's very important that the supplemental rules, supplemental rule E4F, puts the burden not upon the defendant, not upon the owner of the property. It puts the burden upon the plaintiff to show why the writ should not be vacated. It's stated that way. And so the burden was upon EP team and pro-ship line in this case, and they couldn't meet that burden. Judge Burgess went through and made his decision in this case not unaided by what had already taken place. We already had a court in the Southern District of Texas who told these same plaintiffs, you cannot pursue a Rule B attachment. The reason you can't do it is you're all down here in Texas. Judge Burgess also already had in front of him Judge Sweet's decision that under the Second Circuit's rule, you cannot pursue a Rule B attachment because of this equitable ground. And that is, you're all present in Texas. You can all go there and have your litigation. That becomes law of the case, if you will, under res judicata principles, that prevents these plaintiffs from shopping everywhere around the country where a vessel chartered by Aspen might come to call. There needs to be an end to the litigation. Once federal courts of the United States have told you that you do not have that provisional remedy available to you under the circumstances that exist with respect to you and your defendant, then that should end it. What these plaintiffs are trying to do is they're trying to re-litigate the same issue over and over again. And in the same way that we cannot dispute the Second Circuit's resolution of the maritime nature of the contract issue, they cannot dispute. Why can't you just get a restraining order or an injunction from the Southern District of Texas that enjoins the plaintiffs from any further Rule B attachment? Well, I suppose that we could go and apply for that, Your Honor. Wouldn't that be cheaper and simpler and quicker than running around the country litigating in various circuits? And would not there be adequate security to pay all the debts instead of just this, that, and the other thing? Well, that's a practical difficulty in terms of the amount of damages that are being sought because you have only so much bunkers on board vessels when they call to port. So there's sort of – I think that explains why they were doing it. I think there's an aggregation of trying to get security to amount to the sizable claim that they were saying that they wanted to pursue at some point. And in response to your question, that's something that I suppose our client could go pursue, but you have to ask why should we have to go do that where we've got principles of res judicata which apply for litigation. But res judicata doesn't do you any good unless a court declares that it applies. Right. And, I mean, the easiest thing to do is to seek relief in front of the district court. Well, actually, I guess you can't because they've now sent you arbitration in Singapore. As far as the claims go between the parties, the merits of those, those are being sorted out in – Is there a timeline set on the Singapore arbitration? International arbitration is a different animal. I know something about it. There are ongoing proceedings there, and they actually sit with counsel and witnesses from time to time. And I believe that there is another session that's scheduled, but I honestly can't remember. It's kind of like an Italian trial. I think it probably is, although this one will be in English in Singapore. One other point that I wanted to make on the equitable grounds that I think apply here is that 9 U.S.C. Section 8 is part of the Federal Arbitration Act. It's that part of the act which tells parties, if you have a valid maritime claim that's subject to arbitration, you may still pursue certain provisional remedies as allowed by the supplemental admiralty rules. And that necessarily is what the plaintiffs were pursuing here. So through 9 U.S.C. Section 8, they knew they had to arbitrate their claims because the court in Texas had told them that earlier. They pursued the Rule B here. But they shouldn't be allowed to proceed with that where they did nothing to pursue any claims in arbitration. In other words, why should you be able to invoke admiralty process to obtain security for an award in arbitration when you're not pursuing those claims in arbitration? They had reasons for not doing it, but not having done so, there's an alternative basis there available for this court to affirm what was done below. Is there anything going on in Houston? My understanding from the record was that once the court ordered the parties to international arbitration, it closed the file. That's correct. It said you can come back to confirm the arbitration award when it's over. That's correct with respect to that first action. There's another action pending? There were two, actually, because first, these same plaintiffs filed a lawsuit in Texas, and the court said, no, you can't do that because these are the claims that are subject to arbitration. You have to go to Singapore. Promptly after that, these same plaintiffs filed a new federal court action invoking 9 U.S.C. Section 8, attempting to obtain Rule B security in the Southern District of Texas. Again, the court there said, no, you're all here. You cannot invoke Rule B where you're all here. I'm not going to allow it. After that, nothing else has happened in terms of Rule B. But why can't they seek Rule B attachments in a district like Western Washington? Because the Second Circuit has told them that's not available to them. This is litigation between the same parties. They should not be able to shop it around to other courts until they find a court that would on its own come up with a different decision. I thought what the Second Circuit said was you can obtain the attachment, but we're going to equitably vacate it every time you do it in the Southern District of New York. I don't know that they said we're going to let you do it repeatedly, but we're going to vacate it each time. What they were looking at, they were reviewing the district court's decision. The district court had vacated the Rule B attachment on three separate grounds. The first of which was that, hey, this contract really does not satisfy maritime jurisdiction. That was turned around. The second basis was equitably you shouldn't be able to do this because you are the parties who are all in Texas. We're not going to allow it. That should apply no matter where they go in the country. That's where the principles of res judicata should apply. The third ground the Second Circuit didn't reach. It didn't make any decision because it didn't need to. Unless Your Honors have any other questions, I don't believe that we got beyond the issue of the enforcement of the Rule B attachment. There are some other issues. If you had any questions about the equitable powers that were invoked by Judge Burgess to require that the full value of the bunkers taken be restored, I'd be happy to answer those questions. Thank you. Okay. Thank you. You're over your time. Let me give you a minute for rebuttal, please. Thank you. Of course, there was no ruling in the Second Circuit that these plaintiffs can never obtain Rule B process against this defendant in any jurisdiction. And what's really going on here is the defendant would like to have the benefit of a restraining order without meeting the burden of proof that would be required for such a restraining order. In fact, each Rule B writ must fall or stand on its own merits wherever it may be filed by evaluating each of the or sought by evaluating each of those four elements. So to say that under some issue preclusion doctrine, proship should not be allowed to pursue Rule B remedies in Washington is just simply not the law, nor is it consistent with the law. Well, under the rulings of the courts, you're not permitted to pursue them in Texas or southern New York, correct? Correct. Yeah. So now counsel makes the argument that proship line did nothing to pursue its claims in arbitration. I find that argument offensive. It's also completely inconsistent with the record. You're over your time. Thank you very much. If you need a sentence to complete your thought, you can. That sums it up. Thank you, Your Honor. Okay. The proship line versus Aspen infrastructure case shall be submitted.
judges: Beezer, Gould, Tallman